23 So.2d 196

**STATE ex rel. BOYLAN v. BOYLAN'S PRIVATE POLICE, Inc.**

No. 37598.

June 29, 1945.

Benjamin Y. Wolf, of New Orleans, for defendant and appellant.

Milton W. Boylan, Jr., for respondent and appellant.

Matthey A. Grace and M. C. Scharff, both of New Orleans, for relator and appellant-appellee.

HAWTHORNE, Justice.

This is a mandamus proceeding filed July 29, 1943, against Boylan's Private Police, Inc., in which relator, Milton W. Boylan, Jr., seeks to have said corporation reissue to him 253 shares of the common stock of said corporation and permit him, as such stockholder, to inspect the books and records of the respondent corporation.

Relator, Milton W. Boylan, Jr., alleges that he is the owner of two certificates of the common stock of Boylan's Private Police, Inc., Certificate No. 3 being for 252 shares and Certificate No. 4 for one share, each share having a par value of $10, which stock was subscribed for by relator in the articles of incorporation. He further alleges that he has been refused the privilege of examining the books of said corporation after written requests made through his attorneys; that under date of April 10, 1940, all the subscribers of stock named in said articles of incorporation entered into an agreement with one Henry Muller, which agreement is attached to the petition, in which all these subscribers pledged their certificates of stock for the payment of a note in the sum of $4,200; that on or about September 22, 1942, the said stock was returned by Henry Muller to the respective owners thereof; that relator's stock was illegally cancelled by the corporation; that said act of cancellation was an attempt to deprive relator of the ownership of said certificates, and that for these reasons he is entitled to have said certificates of stock reissued and is entitled under the law to be permitted to inspect the books of said corporation. To this end he prays for a writ of mandamus.

Milton W. Boylan, Sr., intervened, alleging that he is the owner of the stock in question, which stock was issued to him for the business which was being conducted by him under the name of Boylan's Protection Police, and that the stock was placed in the names of Milton W. Boylan, Jr., relator, and Thomas M. Boylan, his two sons, for convenience only, and that he never at any time donated said stock to these individuals. He prays to be recognized as the owner of such.

Respondent, Boylan's Private Police, Inc., filed answer, setting forth that the corporation was formed for the purpose of taking over the business of Boylan's Protection Police; that the stock issued to Milton W. Boylan, Jr., and Thomas M. Boylan was issued solely for the purpose of convenience, of which fact these persons had full knowledge; that the said Milton W. Boylan, Sr., had not made any donation to these parties, nor was there any intention to do so; that relator, Milton W. Boylan, Jr., is not the owner of the stock claimed by him.

In the alternative, respondent alleges that relator never paid for the stock, and that it was forfeited pursuant to the provisions of Act No. 250 of 1928, as amended, and that relator was notified of such forfeiture.

After trial on the merits, the alternative writ of mandamus, issued at the time of the filing of the petition, was made peremptory insofar as the right of examination of

the books was concerned, but recalled in all other respects. From this judgment respondent, Boylan's Private Police, Inc., and intervenor, Milton W. Boylan, Sr., have appealed suspensively, and relator, Milton W. Boylan, Jr., has appealed devolutively from that portion of the judgment recalling the writ of mandamus for the issuance to him of 253 shares of common stock of the corporation.

Boylan's Protection Police was established in the City of New Orleans in 1880 by the father of intervenor, and in due time was inherited by his heirs, among these being Milton W. Boylan, Sr., who has been connected with said business since November of 1906, same having been operated as a partnership in which he owned a 15 per cent interest prior to his father's death, and who has spent his entire life in this business.

On June 14, 1938, Boylan's Private Police, Inc., was organized for the purpose of taking over the business of Boylan's Protection Police, a partnership, for the reason that the partnership had become involved financially and was in litigation. In the articles of incorporation the subscribers of stock were named as follows: Milton W. Boylan, Sr., one share; Mrs. Milton W. Boylan, Sr., one share; Milton W. Boylan, Jr., 253 shares; Thomas M. Boylan, 245 shares. Boylan, Sr., was named as president, his wife as vice-president, and Boylan, Jr., as secretary and treasurer. The capital stock of the corporation was fixed in the charter at the sum of $5,000, represented by 500 shares of the par value of $10 each.

On June 15, 1938, the board of directors of the corporation approved the purchase of the accounts receivable, office equipment, and furniture of Boylan's Protection Police for the sum of $2500.

Milton W. Boylan, Sr., being ill at the time, his son, Boylan, Jr., took charge of the business of the corporation as secretary and treasurer at a salary of $250 per month.

At the time the corporation was organized or shortly thereafter, Boylan, Jr., borrowed (1) $600 from C. L. Curet, (2) $500 from an individual named Brinkman and subsequently $200 from the same source, making a total of $700 on the Brinkman loan, and (3) $100 from Jules Viosca. All these sums were turned over to the corporation for the purpose of meeting its obligations, such as payrolls, etc. Although Boylan, Jr., gave his personal note for the Brinkman and Curet loans and handled all these sums, the Brinkman loans were procured from family connections through his mother's influence.

In 1939, Boylan, Jr., refinanced certain property located at 3615 Canal Street, and received in this transaction the sum of $1,600 in cash, from which amount he paid the Curet note of $600 and purchased $1000 in homestead stock, which at a later date was cashed and used in discharging obligations of the corporation.

Under Boylan, Jr.'s management, the corporation became heavily involved financially, and on April 10, 1940, one Henry Muller advanced to said corporation the sum of $4,200 to discharge certain obliga-

tions and meet two payrolls of approximately $900 each, on the condition that the corporation execute its note for said sum with the individual endorsement of each shareholder, which note was secured by pledge of all the outstanding capital stock of the corporation and in addition by a collateral mortgage note executed by Boylan, Jr., in the sum of $2,500. This agreement with Muller further provided that he was to have full and complete management and control of the affairs of the corporation until such time as he had been fully repaid.

At the time this agreement was executed, the certificates of stock subscribed for in the articles of incorporation were issued for the first time to the respective parties as therein set out, although the corporation had been in existence about two years. These certificates were delivered to Muller.

Several days after this agreement, Boylan, Jr., resigned from the board of directors and as secretary and treasurer of the corporation. Muller assumed full control under the agreement and conducted the business affairs of the corporation until about September 22, 1942. The amount of the indebtedness to him being at that time paid, he returned the certificates of stock to the individual subscribers, all being present at the home of Boylan, Sr., and accepted a receipt from each showing this fact.

On July 8, 1942, prior to the return of the certificates, a meeting of all the subscribers to stock of Boylan's Private Police, Inc., as set forth in the articles of incorporation, was held at 3615 Canal Street, the residence of all the subscribers, being the home of Boylan, Sr. At this meeting, it was agreed that, since the original stock certificates had been issued without payment in cash or its equivalent, same were null and void and would be destroyed when returned to the corporation, and in their stead there were ordered issued by said board, upon written applications' being made for same, certificates of stock as follows: Boylan, Sr., 126 shares; Mrs. Boylan, 126 shares; Thomas M. Boylan, 124 shares, and Boylan, Jr., 124 shares. Boylan, Sr., Mrs. Boylan, and Thomas Boylan signed written applications for said certificates of stock, and, although Boylan, Jr., was present, he refused to take any part in the meeting and refused to accept the office of secretary or membership on the board of directors, both of which were offered to him at that time.

On November 18, 1942, Boylan, Sr., intervenor, as president of the corporation, addressed a letter to Boylan, Jr., demanding full payment for 253 shares of stock of the corporation, amounting to $2530, which letter set forth that, in the event payment was not made within 15 days after demand, the stock would be forfeited to the corporation, pursuant to the provisions of Section 6, Paragraph IV, Act No. 250 of 1928, as amended.

On December 12, 1942, at a meeting of the board of directors of the corporation, said 253 shares of stock were declared forfeited to the corporation and considered as unissued and not subscribed for, due to the failure of the said Boylan, Jr., to make pay-

ment therefor within 15 days after notice had been given him by registered mail under date of November 18, 1942. Pursuant to this resolution, the corporation on December 14, 1942, notified Boylan, Jr., that the stock in question had been forfeited to the corporation.

On March 19, 1943, the corporation again called Boylan, Jr.'s attention to the written demand of November 18, 1942, for payment of his subscription for 253 shares of stock in the corporation, and confirmed the forfeiture of the stock to the corporation as being unissued and not subscribed.

When the stock certificates were returned to Boylan, Jr., they were marked "Cancelled as being improperly issued by meeting Board of Directors July 8, 1942 Milton W. Boylan President".

This suit was instituted on July 29, 1943.

The incorporators and subscribers to the stock, as set forth in the articles of incorporation, are members of one family, Thomas M. Boylan and Milton W. Boylan, Jr., being the sons of Mr. and Mrs. Milton W. Boylan, Sr. All resided together at the common dwelling at 3615 Canal Street. At the time the suit was filed in the lower court, Boylan, Jr., was 37 years of age, and had during his entire life, according to his own statement, been supported by his father. However, he did start to work for Boylan's Protection Police, the partnership, at the age of 16 or 17 years for a salary of $60 per month, which was subsequently increased to $100 per month. During these years, the relationship between father and

son was, as expressed by Boylan, Jr., very close and intimate.

At the time the corporation was organized in 1938, due to the illness of the father Boylan, Jr., attended to all the details with reference to the organization of the corporation. In fact, his father, who was confined to his home, did not take any active part therein until some 11 months later.

At the time the corporation was organized or shortly thereafter, Boylan, Jr., borrowed, as stated hereinabove, $600 from Curet, a total of $700 on the Brinkman notes, and $100 from Jules Viosca, a total of $1,400. He gave his personal notes for the Curet and Brinkman loans, and the loan from Viosca was on an open account.

The common dwelling, located at 3615 Canal Street, was conveyed to the two Boylan sons, who executed a counter letter reciting that the title to said property was placed in their names for convenience only, and that the property, although of record in their names, was actually owned by Boylan, Sr., and his wife. Subsequently, Thomas M. Boylan conveyed his interest to Boylan, Jr. In August, 1939, Boylan, Jr., refinanced this property through a homestead association, and, after discharging certain encumbrances operating against the property from the proceeds of the loan, received in cash the sum of $1,600.

Boylan, Jr., now contends that the sum of $1,400 received from the various loans, as above itemized and set forth, and the sum of $1,600 received from the homestead

association, a total of $3,000, were paid by him into the corporation with the intention that they were in full payment of his subscription of 253 shares of the par value of $10 a share, a total of $2,530.

From the proceeds of the loan secured by a mortgage on the common dwelling, which is actually owned by Mr. and Mrs. Boylan, Sr., although in the name of Boylan, Jr., he paid in full the Curet note of $600, and purchased $1,000 in homestead stock which was subsequently sold and applied to obligations of the corporation.

At the time Boylan, Jr., severed his relations with the corporation on April 15, 1940, the principal amount of the Brinkman loan had not been paid, although he testified that, during the time he was with the corporation, he executed each month a new note for this amount plus interest, which interest he stated he paid from his salary of $250 a month. These notes, together with the Curet notes, which were handled in the same way, are in the record. Boylan, Jr., executed the last Brinkman note on February 15, 1940, and at the same time gave a note of the corporation for the same amount. He testified that the corporation, and not he himself, was going to pay the money back. At the time of the trial, the corporation had actually made seven monthly payments of $50 each on said indebtedness, a total of $350, and no demand whatsoever has been made on Boylan, Jr., for the payment of his note since he left the corporation.

He contends that the Viosca loan was repaid by him from the proceeds of a personal loan.

Of the $3,000 which relator contends he paid into the corporation at the time of its organization or shortly thereafter, with the intention that this sum was to be in full payment of his stock subscription of 253 shares, we note that $1600 was the net proceeds of a loan secured by a mortgage on property actually owned by his father and mother, $600 of said amount being used to pay the Curet note and $1,000 for obligations of the corporation, and note also that the $700 Brinkman loan was not paid by him but is now being paid by the corporation itself.

During the illness of Boylan, Sr., and up until the time Boylan, Jr., left the employ of the corporation, according to the latter's testimony, all monthly installments on the homestead loan were paid by him. He testified that he had made a few such payments after he left the corporation, but that he presumed his father had paid them since that time. On the other hand, Boylan, Sr., testified that he himself had made all such payments since April, 1940. It is to be noted that the property was financed in August, 1939, and that Boylan, Jr., left the employ of the corporation in April, 1940.

To have the 253 shares of stock reissued, Boylan, Jr., must establish by a preponderance of the evidence that he has paid his subscription in full, and, to have the right to examine the books and records of the corporation, he must establish that he has been the owner of record of at least 2 per cent of all outstanding stock of the corporation for at least six months—all as provided in Section 16, Paragraph I, and

Section 38, Paragraph III, of Act No. 250 of 1928, as amended by Act No. 34 of 1935, 4th Ex.Sess.

 A reading of the entire record convinces us that the corporation was formed to continue the business of Boylan's Protection Police, and that, as testified by Boylan, Sr., at the time the charter was drawn, although the subscriptions for the majority of the shares of stock, as set forth therein, were placed in the names of the two sons, it was not the intention of these parties that these shares should belong to the sons. On the contrary, we are of the opinion that it was the intention of all parties that, when and if the corporation became sound financially, the shares of stock were to be resubscribed and reissued in approximately equal proportions to the four members of the family. In fact, after Muller placed the corporation on its feet by paying all of its obligations during his management and control, the board of directors attempted to re-allocate the shares, placing 126 shares in the name of each of the parents and 124 shares in the name of each of the sons. However, Boylan, Jr., refused to accept this arrangement, refused to take any part in the matter, and refused to accept the 124 shares of stock offered to him.

We are further impressed with the fact that this was a corporation owned entirely within one family, and are convinced that Boylan, Jr., in obtaining funds which he placed in the corporation, did so merely for the purpose of holding the corporation together and preventing it from going on the rocks financially. In other words, he was making a conscientious effort to keep alive the business which had been in his family for many years, and we are convinced that the amounts received by him, as set forth hereinabove, were not, and were never intended by him to be, payments on his stock subscription of 253 shares. He himself testified that he was not interested in getting any sum of money returned to him during this time, and that his main object was "to get the business to run to support me and the rest of the family".

As further evidence that these amounts were not intended as payments on stock subscription, we are impressed with the fact that Boylan, Jr., stated that he made an effort to have the $600, the amount of the Curet loan, returned to him by Muller, and, if this amount was payment on his stock, as contended by him, we are unable to understand why he should have demanded its return under these circumstances.

Since we have concluded that relator has not paid his subscription for 253 shares of the common stock of the corporation, or any part thereof, it naturally follows that the action of the board of directors in cancelling said subscription under the provisions of Section 6, Paragraph IV, of Act No. 250 of 1928, as amended, was correct and proper.

 For the reasons assigned, it is now ordered that the judgment appealed from be reversed insofar as it made the alternative writ of mandamus peremptory to the extent of commanding respondent, Boylan's Private Police, Inc., to grant to relator, Milton W. Boylan, Jr., the right to examine

any and all of the books and records of said corporation and to make extracts therefrom, and the writ of mandamus so made peremptory is recalled and set aside; in all other respects said judgment is affirmed and made the final judgment of this court; relator, Milton W. Boylan, Jr., to pay all costs.